Loretta RAMOS, Individually and on behalf of her minor children, Judy Ramos, Douglas Ramos, Elionay Ramos, Brian Ramos, and Robert Ramos, and on behalf of all others similarly situated, Plaintiffs,

v.

HEALTH AND SOCIAL SERVICES BOARD OF the STATE OF WISCONSIN DEPARTMENT OF HEALTH AND SOCIAL SERVICES, Milwaukee County Department of Public Welfare, and J. E. Baldwin, Individually and as Director of the Milwaukee County Department of Public Welfare, Defendants.

No. 67–C–329.

United States District Court
E. D. Wisconsin.

Nov. 21, 1967.

Timothy C. Frautschi, Milwaukee, Wis., for plaintiffs; Brian Glick, Henry A. Freedman, New York City, Bettie McJunkin, Law Reform Co-ordinator, Milwaukee Plan Legal Services, Milwaukee, Wis., of counsel.

Robert P. Russell, Corp. Counsel for Milwaukee County, by William M. Hayden, Asst. Corp. Counsel, for defendants Milwaukee County Dept. of Public Welfare and J. E. Baldwin as Director of the Milwaukee County Dept. of Public Welfare.

Bronson La Follette, Atty. Gen. of Wisconsin, by Donald P. Johns, Asst. Atty. Gen. of Wisconsin, for defendant Health and Social Services Board of State of Wisconsin.

Before FAIRCHILD, Circuit Judge, and REYNOLDS and GORDON, District Judges.

FAIRCHILD, Circuit Judge.

This is an action for injunction against enforcement of certain provisions of the Wisconsin Statutes upon the ground of their unconstitutionality. The challenged provisions require an applicant for certain welfare aids to have continuously resided for one whole year in this state immediately prior to an application for relief.[1]

Plaintiff Loretta Ramos is a citizen of the United States and a resident of the state of Wisconsin, whose application for aid to dependent children has been denied because her present period of continuous residence in Wisconsin is less than one year. She sues individually, and on behalf of her five minor children, and all others similarly situated.

Defendants are state and county officers charged with administration of the statutes in question.

Plaintiffs moved for a preliminary injunction. Defendants began a state court action and moved for a stay of this action pending determination in the state court. Those matters were heard November 6, 1967, and temporary restraining order issued.

On the basis of the present record, and for the purpose of the motion for preliminary injunction, we find the facts and reach the conclusions stated herein.

Mrs. Ramos was born in Wisconsin and lived here until her marriage in 1957. Thereafter she and her husband lived in Illinois. They have five children ranging in age from 2 to 9 years. Her husband deserted her in June, 1967, and she and the children moved to Milwaukee August 21, 1967, where they have lived ever since. She has no financial resources, takes care of the children, and is not employed. She has relatives and friends in this area and desires to be near them. She asserts that she is eligible for aid to dependent children, except for the residence requirement, and the record does not show her otherwise ineligible.

*Motion for stay.*

Mrs. Ramos' action in this court was commenced October 12. On October 31 the state department of health and social services and its health and social services board, one of defendants here, brought an action against Mrs. Ramos in the circuit court for Dane county, Wisconsin. Plaintiffs in the state court action seek a declaratory judgment upholding the constitutionality of the statutory provision under attack. The state court entered an order staying "all action" by the department and board under the challenged statutes until determination of the state court action.

Defendants here contend that the state court action constitutes an action to enforce the challenged statutes, and the stay order a stay of proceedings under such statutes, as contemplated by the second paragraph of 28 U.S.C. sec. 2284(5). If defendants were correct, the federal statute would require us to stay the action.

The difficulty is that the state court order does not stay defendants' reliance upon the one year provision which plaintiff challenges.[2] She is in need, and appears to be eligible for the requested aid except for the residence requirement.

1. The requirement is found in section 49.-01(7), Wis.Stats., and is made applicable to aid to the blind in sec. 49.18(2) (a); to aid to dependent children in section 49.19(4) (b); to old age assistance in section 49.22(1) (c); and to aid to totally and permanently disabled persons in section 49.61(2) (b). There are certain reciprocity provisions not material here.

2. It is not clear exactly what "action" of the state department and board the state court intended to stay. We adopt the assistant attorney general's own construction of the order (which he reports is the view expressed to him by the judge who signed the order), that it does not stay reliance on the one-year residence requirement.

It seems to us that in order to compel a stay of Mrs. Ramos' action in federal court (which was commenced first) under 28 U.S.C. sec. 2284(5) the state court stay must prevent reliance upon the provision under attack during the period while the state court is deciding the question.

There may well be a difference, from the point of view of the state, between withholding state action to enforce a prohibitory statute, pending decision of its validity, and disbursing public funds in such interim with little possibility of recovery in the event the state ultimately wins. The latter is the situation here. But we do not believe Congress intended, because of that difference, to favor state court decision of a question like the present one where the federal plaintiff is not guaranteed interim protection. If the state court is powerless or unwilling to afford interim protection in this circumstance, sec. 2284(5) does not compel a stay of the federal action.

The question in this instance, moreover, is solely one of federal law, and no one suggests the presence of state law questions so that we might abstain as a matter of discretion.

We find support for our conclusion on the matter of the stay in two cases. In Dawson v. Kentucky Distilleries Co.[3] the state moved for abstention in a federal court proceeding (under a predecessor of section 2284(5)) on the ground that a stay had been issued in a pending state court action which involved different parties but the same questions. The Supreme Court said:

"The stay contemplated by Congress is a general one, which would protect, among others, those who had already sought protection in the federal court. The restraining order issued in a purely private litigation between third parties in the county court left the plaintiffs in the suits before us subject to all the danger of irreparable injury against which they had sought protection in the federal courts." [4]

In Northwestern Bell Telephone Co. v. Hilton,[5] the company filed application for a temporary rate increase. The state commission denied the application. The company challenged in federal court the constitutionality of the order and the statute on which it was based. The commission brought a state court action to enforce the order. In deciding not to abstain, the federal district court held that the state court would have to grant temporary relief in a stay order as broad in scope as the temporary relief requested in the federal action before the federal court would be required to abstain. The court said:

"If counsel for defendants here would state in open court that the stay order in the state court would be construed as meaning that the order of the commission * * * as well as the provision of * * * the Telephone Law, would be suspended during the carrying on of the action in the state court, he would have a case * * *." [6]

We have denied the stay.

*Equal protection of the laws.*

Mrs. Ramos is a resident of Wisconsin, is in need, and (except for duration of residence) is apparently eligible for the aid for which she applies. The provision under attack divides the entire group of needy and eligible Wisconsin residents into two classes. Under it (except for certain reciprocity provisions not material here), aid is denied to those who, like Mrs. Ramos, have resided in the state less than one year immediately past. In the other class are those who have resided continuously within Wisconsin for at least one year immediately past, and those who have returned after leaving the state within the past year, and who, at the time of leaving had resided continuously within Wisconsin for one year immediately past. Aids are granted to members of the latter class.

3. (1921), 255 U.S. 288, 41 S.Ct. 272, 65 L.Ed. 638.

4. Id. at 297–298; 41 S.Ct. at 276.

5. (D.C.Minn.1921), 274 F. 384.

6. Id. at 387.

We think the ultimate question in this case is whether the classification is reasonable in the light of some proper legislative purpose. If not, the provision denies equal protection of the laws.

Several actions have been brought in other districts, challenging similar statutes. In three, permanent injunctions have been granted, at least one ground of decision in each being that the one year residence requirement denies equal protection of the laws.[7] In two other actions, there has been no final determination, but interlocutory relief has been granted.[8] An action (Johnson v. Robinson) has been recently instituted in the Northern District of Illinois.

We have considered the purposes which might be thought to be served by a provision of this sort, whether such purpose is a proper legislative purpose, and whether the provision is reasonable in the light of such purpose.

By definition, the one year residence requirement is not a waiting period required of all applicants. Whatever arguments might be legitimately made in favor of a waiting period required of every applicant, regardless of length of residence, they can not reasonably be used to support a provision whereby aids are denied to all needy and otherwise eligible applicants who have resided in the state less than one year and granted to appliants similarly situated with respect to need and eligibility, but who have resided here for more than one year.

And because the residence required here is one year, we need not consider whether there are distinct considerations which might support a requirement of a relatively short period of residence.

Purposes which the one year residence requirement might be thought to serve appear to be as follows: (1) To make it unprofitable for a nonresident to come to Wisconsin for the purpose of drawing welfare aid payments; (2) to discourage nonresidents from coming to Wisconsin for other purposes unless they are certain of their ability to sustain themselves for the first year; and (3) to encourage or compel recent arrivals who find themselves in need to leave Wisconsin, presumably to return to their previous homes.

In our opinion, purposes (2) and (3) are not proper state legislative purposes. In Edwards v. People of State of California[9] the Supreme Court held invalid a California statute which prohibited anyone from bringing an indigent person into California. The statute had the overall purpose of protecting the state and local public treasuries, as does the statute at bar. The majority in *Edwards* held the California statute an unconstitutional barrier to interstate commerce. It is true the one year residence requirement does not interfere as directly with interstate movement as did the California statute, but it is significant that the majority concluded that the state's desire to protect its treasury from applications for aid by recent arrivals did not justify interference with interstate movement.

Moreover four members of the court[10] concluded that citizens of the United States have a right, regardless of their economic condition, to seek their fortunes in states of their choice, a right which the state can not abridge.

█ It follows, we think from either theory, that a state can not justify a classification of its needy residents which operates to discourage nonresidents from coming to the state and to force recent arrivals to leave.

**7.** Thompson v. Shapiro, 270 F.Supp. 331, D.C.Conn., decided June 19, 1967; Green v. Department of Public Welfare, D.C. Del., 270 F.Supp. 173, decided June 28, 1967; Harrell v. Tobriner, 279 F.Supp. 22, D.C.D.C., decided Nov. 8, 1967.

**8.** Smith v. Reynolds, D.C.E.D.Pa., preliminary injunction granted June 1, 1967; Mantell v. Dandridge, D.C.Md., temporary restraining order issued Oct. 24, 1967.

**9.** (1941), 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119.

**10.** Concurring opinion of Mr. Justice Douglas, with whom Mr. Justice Black and Mr. Justice Murphy joined, and concurring opinion of Mr. Justice Jackson.

We surmise that purpose (1) is the purpose most widely thought to be served by the one year residence requirement. It is our impression that people of any state are inclined to believe that the level of aids in their home state is higher than elsewhere and that if there is no lengthy residence requirement, nonresidents who are willing to live on public aids will move into the home state to enjoy a higher level of aid payments.

Purpose (1) and purpose (2) are both based on an assumption that poor people throughout the country have a considerable knowledge of the welfare laws of the various states, and take them into consideration in a decision to move. The factual basis for the assumption is dubious. There have been studies which indicate that people are motivated by employment, better opportunities, better living conditions, the presence of friends and families, and the like.[11]

■ Even if we assume, however, that some people move in order to enjoy a greener welfare pasture, and that a state may properly deny aid payments to persons who come with that intent, we think the one year residence requirement is not reasonable in the light of such purpose. It has the effect of a conclusive presumption that all people who need aid within a year have come for that purpose. It not only exerts the duress of the denial of the necessities of life upon people who have been so motivated, but also upon others who have come for different reasons, and upon children who have exercised no choice in the matter. In our opinion, the presumption of validity is overcome.

We are aware that the one year residence requirement enjoys some implication of congressional approval, since Congress selected one year as the longest period of residence which could be required by any state without disqualifying the state's program from federal participation.[12] The question, however, is whether the state statute violates the fourteenth amendment, and approval by Congress does not control. We have already cited the decisions of three district courts invalidating one year residence requirements [fn. 7]. In one of them, Harrell v. Tobriner, 279 F.Supp. 22, the court dealt with a one year residence requirement imposed by Congress in the District of Columbia, and held that it violated the due process requirement of the fifth amendment.

■ We conclude that plaintiff is entitled to a preliminary injunction, enjoining defendants, their successors, and persons under their control from denying to an applicant aid to the blind, aid to dependent children, old age assistance, or aid to totally and permanently disabled persons where such denial is based upon lack of fulfillment of the one year residence requirement in sec. 49.01(7), Wis. Stats. Counsel for plaintiff is directed to prepare and submit to defense counsel and the court a suitable form of decree. Because of questions raised by counsel concerning the breadth of our temporary restraining order we have limited the preliminary injunction to the types of aid mentioned.

We have ruled that this is a proper class action. Under the circumstances, however, it is impracticable to give notice to members of the class represented by plaintiff beyond that which has resulted or will result from coverage by news media.

We emphasize that what has been said in this opinion is based upon the pleadings and affidavits and the submission by the parties of legal issues upon a motion

11. See New York State Department of Social Welfare, The Movement of Population and Public Welfare in New York State (1958); Greenleigh Associates, Inc., Facts, Fallacies, and Future (1960); A Study of Families from the Southern Appalachian Region Receiving Public Assistance (1960); A Follow-Up Study of General Assistance Applications to Determine Possible Changes in Their Characteristics (1961); The Blackboard Curtain (1962); Characteristics of General Assistance Applicants (1965).

12. See 42 U.S.C. secs. 302(b) (2), 602(b) (2), 1202(b) (1), and 1352(b) (1).

for preliminary injunction, and the decision at this time is limited to the granting of such injunction. In the nature of things, however, particularly in a matter where the main or sole issues are issues of law, the decision on preliminary injunction tends to be the decision on the merits. We do not foreclose a trial if any party considers there are issues of fact or further briefing and argument on the law if desired. We direct each party to inform the court within 30 days from the date the opinion is filed whether he wishes a trial in order to establish facts, or a hearing on issues of law. If counsel for plaintiff prefers to amend the complaint to include forms of assistance or aid not above enumerated, he should so inform us. After learning the desires of the parties, we will determine the course of further proceedings herein, or proceed to final disposition.